CINCINNATI & DAYTON RAILWAY CO. v. MIAMI & ERIE CANAL TRANSPORTATION CO.

1. GRANT OF CANAL LANDS SUBJECT TO PARAMOUNT USE FOR CANAL PURPOSES.

The board of public works cannot abridge any of the natural, original or developed uses of the state canals by a grant to a railroad company of a right of way across the canal property, and in case of conflicting rights, the use for canal purposes is paramount, and the railroad must yield thereto. Hence, a use, under such a grant, which is an interference with or limitation upon any of these uses of the state canals, transcends the rights of the state, and is in the nature of a trespass.

2. INJUNCTION AGAINST UNCONSTITUTIONAL TAKING OF PROPERTY DENIED, WHEN.

Even if it is not absolutely true that there is no taking of private property within the meaning of Sec. 19, Art. 1 of the constitution, when, in the use of state canal property for a lawful canal purpose, the tracks of a railway company, which had been granted a right of way across such canal property by the board of public works, are crossed and cut, nevertheless, as equitable remedies are not matters of absolute right, an injunction to restrain such an interference with, or taking of, private property will be refused where such taking would be the merest figment, without substance, and the damage done clearly reparable.

JELKE, J.

Application is made to this court for an order enjoining the Miami & Erie Canal Transportation Company from crossing and cutting the tracks of the Cincinnati & Dayton Railway Company at a point where the latter railway crosses the towpath of the canal.

Cincinnati & D. Ry. Co. v. Miami & Erie C. T. Co.

It appears, from the evidence, that the construction upon which the Miami & Erie Transportation Company proposes to run and operate the car or motor used for the propelling of canal boats is generally similar to the standard track construction of steam and electric railroads.

An injunction is asked for the following reasons:

1. The defendant company has not come to any agreement with plaintiff company as to terms and conditions upon which it may cross its tracks and right of way.

2. That plaintiff's right of way and tracks constitute an easement and property rights, and that defendant company has not purchased the right to disturb or interfere with the same.

3. That defendant company has not sought to appropriate plaintiff's property right by condemnation proceedings, and cannot, because in its creation defendant company has not been given the power of eminent domain.

4. That plaintiff's claimed property right cannot in any way be taken, disturbed or diminished, under the constitution, without compensation being first made therefor.

We are of opinion that none of these grounds upon which plaintiff company applies for this remedy are sound. When it comes to a question of respective rights, it is the right of the Cincinnati & Dayton Railway Company which must yield to any use of the canal. "The policy of the state has always been to regard canals as a public use of paramount importance as against other public uses, such as common highways and railroads." No rights can be granted by the board of public works in the canal property which will in any way abridge any of the natural uses of the canal. The Cincinnati & Dayton Railway Company claims to be where it is by virtue of a grant from the state board of public works.

Now, whether or not there is some latent scheme in this use of the canal, and whether or not it is ultimately going to develop into a diversion of the canal from the uses for which it was constructed, is a question which does not appear, and we cannot tell, and which, after all, is a matter which is left to the board of public works and to the state legislature.

This being so, any use of its right of way across the canal and its banks by the Cincinnati & Dayton Railway Company which is an interference with or limitation upon any of the natural, original or developed uses of the canal, transcends the right granted by the state board to such railway company and becomes in the nature of a trespass upon the canal, and any of plaintiff's property, tracks and ties, and its claimed rights have no peculiar sanctity.

Plaintiff does not come into this court in very good standing in this

controversy.   Plaintiff and defendant companies are in some respects rival enterprises.

.    Counsel for plaintiff say, frankly: "We cannot agree, we do not expect to agree, and, inasmuch as defendant company has not been granted the power of eminent domain, we propose to stop the defendant right here."

If plaintiff company manifested more of a spirit of arranging matters and of getting together, it would appeal more cogently to a court of equity. It is avowedly the purpose to stop the Miami & Erie Transportation Company from the completion of its equipment and from doing business as long as possible.

In our opinion, so far as we can learn from the evidence and the records, what the Miami & Erie Transportation Company is doing is but putting into use a new instrumentality for the use of the canal property within its natural and originally contemplated uses.   Now, if opportunity has been given to the Cincinnati & Dayton Railway Company to cut its own rails and make way for this new use of the canal, it has nothing to complain of.   It might even be said, perhaps not so well by the Miami & Erie Canal Transportation Company, but by the state board of public works, "If you are interfering, or stopping any use of the canal, you will have to get off the canal property entirely."   But, of course, it is not necessary to go that far.

Reliance is had, in a very able brief for the plaintiff, on the constitutional protection which is vouchsafed to property rights, in Sec. 19, Art. 1, that "where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money,"   Upon our understanding of the respective rights of the parties, there is no taking of private property.   But even if, perhaps, this conclusion be not absolutely true, and if there might be some little taking of property in the cutting of plaintiff's rails, it does not follow that plaintiff is entitled, as a matter of right, to an injunction.   Such taking in this case, would be the merest figment.

It appears that defendant has had made, at its own expense, the necessary steel crossings, and is about to do the work without cost to plaintiff. Whatever damage might be done to plaintiff would be perfectly reparable. We are not unmindful that injunction, in cases of taking private property for public use, does not rest on irreparable injury, but on the constitutional guaranty, but even so there must be substance, weight and merit to invoke the chancellor's intervention.

Equitable remedies are not entirely matters of absolute right; there are elements of discretion and grace in them.

Cincinnati & D. Ry. Co. v. Miami & Erie C. T. Co

In a note in the *Harvard Law Review* for April, Vol. XVI, No. 6, p. 444, it is said:

"*Discretionary Power of Courts of Equity.*

"There is no more distinctive attribute of the power of the chancellor than the latitude of his discretion. Equitable remedies being extraordinary, they may, at the chancellor's discretion, be refused or given in order to do equity. And equity is viewed in this connection in a large sense; it is not only what is just and right as between plaintiff and defendant, but also what, according to a sound public policy, is just and right as regards the interests of the public. Thus, where the plaintiff would not otherwise have succeeded, we see equity giving relief because of the public benefit; and where the plaintiff would ordinarily have prevailed, refusing it because of the public harm. Joy v. St. Louis, 138 U. S. 1-50 [11 Sup. Ct. Rep. 243] ; Conger v. Railway Co. 120 N. Y. 29 [23 N. E. Rep. 983]."

And on page 445:

"The chancellor is master of his own writ, and though the claimant hold a legal title, is under no compulsion of law to issue the writ, so long as sound consideration of public morals and conscience forbid."

It is a rule which recognizes all the general principles of equity as residing in the chancellor's conscience. "He who seeks equity must do equity," etc., etc.

Whether we look with favor or disfavor upon this "electric mule," up to the present time, we think we must look upon it as an instrumentality for using the canal for canal purposes. This we ought to do in view of the action of the general assembly and the board of public works. If it subsequently develops into something else, another question will arise.

The restraining order heretofore granted will be dissolved and the prayer of the petition denied.